ROSE E. MCVEIGH *vs.* SAMUEL G. MCCULLOUGH *et al.*
JAMES C. MCVEIGH *vs.* SAMUEL G. MCCULLOUGH *et al.*

JUNE 25, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

414

JOSLIN, J. These are two actions of trespass on the case for negligence brought respectively by Rose E. McVeigh to recover for personal injuries resulting from a fall on the floor of a retail market store owned and operated by the defendants in Narragansett, and by her husband James C. McVeigh to recover consequential damages suffered by reason of such injuries to his wife. Both cases were tried together in the superior court before a jury which returned a verdict for the wife in the sum of $7,000 and for the husband in the sum of $3,000.

The defendants filed a motion for a new trial in each case and each motion was denied. Their exceptions to the denials of their motions for directed verdicts and for new trials, to certain adverse rulings on evidence, to other rulings of

the trial justice during the trial and to a portion of the charge to the jury are urged before us. Other exceptions taken by them and forming a part of their bills of exceptions not having been briefed or argued are deemed to be waived. Since the liability in both cases depends upon the liability in the wife's case, our reference hereinafter to the plaintiff will refer to Rose McVeigh.

The undisputed testimony is that at about 11 a.m. on July 14, 1960 plaintiff fell as she stepped across the threshold of defendants' store to which she had gone for the first time that morning to make some purchases.

The same floor has been in the store during all the time it has been operated by defendants. A civil engineer testifying on behalf of defendants stated that the floor four feet back from the right side of the threshold is two and one-half inches lower than at the threshold and four and one-half feet back from the middle point of the threshold is three and three-sixteenth inches lower than at the threshold, and that the downward slope or pitch from the threshold toward the center of the store is not uniform. He also testified that there is a downward pitch both to the right and to the left from an imaginary line drawn from the center of the threshold and extending four feet into the store. He took no measurements to determine whether there are concavities between such middle line and other imaginary lines extending into the store from the right and left edges of the threshold. The plaintiff, however, maintains that there are such concavities and that they are clearly evidenced in photographic exhibits.

Rain started to fall in the early morning hours of the day in question and continued throughout the day and into the evening, during which period according to a United States meteorologist total rainfall was 2.12 inches. He described this as a lot of rainfall for one day and stated that the total average monthly rainfall in this state is just a little over 3

inches. The plaintiff characterized the rain as heavy; defendants as a generally rainy day.

The testimony is in substantial dispute as to the condition of the floor immediately in front of the threshold on the morning of the accident. Testimony for plaintiff was that the floor in such area was slippery and had a depression in it; that in the depression was a puddle obvious to the eye, 2 by 1½ feet in size, and deep enough so that it would splash if hit with a hand; and that the doorway area was dark and poorly lighted. Testimony for defendants, on the other hand, was that the floor was wet or damp and that such condition resulted from rain being tracked or carried in on the wet feet or clothing of customers. The plaintiff would also have us believe that a reasonable inference to be drawn from the evidence was that rain had been driven into the open store, which faced north and which had no substantial overhang or awning, by what was described by plaintiff's son as being quite windy conditions. The defendants deny that there was any wind-driven rain on the floor. The average wind velocity that morning as testified to by the meteorologist was between 9 and 13 miles per hour and was from the north, northeast.

The defendants' relation to plaintiff in the circumstances here present is well settled. They owed her a duty to use reasonable care to keep their premises in a safe condition for the purpose of the invitation extended to her. They were not, however, insurers of her safety. Her mere falling was not in and of itself evidence of negligence on their part. *Langley* v. *F. W. Woolworth Co.*, 47 R. I. 165; *Faubert* v. *Shartenberg's, Inc.*, 59 R. I. 278. In order to recover she has the burden to allege and prove some specific act of commission or omission by them which amounts in law to negligence and which was the proximate cause of her fall; and she must also show her own freedom from contributory negligence. *Faubert* v. *Shartenberg's, Inc., supra; Wyzga* v. *David Harley Co.*, 60 R. I. 480. The burden is also on plain-

tiff to establish that the condition of the premises which caused her fall had remained long enough to give defendants reasonable notice, actual or constructive, of its existence and that they, after having such notice, negligently failed to remedy the danger or warn her of its presence or existence. *Ziegler* v. *Providence Biltmore Hotel Co.,* 59 R. I. 326.

The defendants' first exceptions are to the denials of their motions for directed verdicts. The verdicts should not have been directed for defendants if on any reasonable view of the evidence the jury could have found for plaintiff. On such motions the trial justice is not permitted to weigh the evidence or pass upon the credibility of the witnesses. He is required to view the evidence in the light most favorable to plaintiff and to give her the benefit of all reasonable and legitimate inferences which could properly be drawn in her favor from the evidence. *Kenyon* v. *Murray,* 90 R. I. 423.

The defendants argue first that the cases should not have been submitted to the jury since there was no evidence that the floor was not in good repair or dangerous or negligently constructed or maintained. They rely principally on *Faubert* v. *Shartenberg's, Inc., supra, Lapierre* v. *Greenwood,* 85 R. I. 484, *Ziegler* v. *Providence Biltmore Hotel Co., supra, Glennon* v. *Great A. & P. Tea Co.,* 90 R. I. 113, *Moors* v. *Boston Elevated Ry.,* 305 Mass. 81, *Kiley* v. *New York, N. H. & H. R.R.,* 301 Mass. 570, and *Miller* v. *Gimbel Bros., Inc.,* 262 N. Y. 107. In these cases it was held that the invitor was not as a matter of law liable to the invitee. We shall refer briefly to each case to indicate how it is distinguishable from the instant case.

In *Faubert* the plaintiff's testimony that she fell on a wet, slippery, oily and unsafe floor involved such inherent improbabilities as to be self-contradictory. The plaintiff's fall in *Lapierre* took place on stairs with coverings which were "old and worn," the court observing, however, that the result might have been different if the coverings had been

"dilapidated." In *Ziegler* there was no evidence that the wet, slippery, marble stairs on which the invitee fell were so constructed or in need of repair as to make them defective or unsafe. In *Glennon* the plaintiff, whose vision was obscured by bundles he was carrying, tripped over a concrete wall 2½ to 4 inches high which separated a planted area from the sidewalk, and we found that there was no evidence showing that the wall was either negligently maintained or constructed. In *Moors* the only evidence as to negligence was that the plaintiff slipped on wet stairs, the court observing, however, that there was no evidence of the existence of a substantial amount of mud or water on the stairs or of a defect in them. In *Miller* the evidence as to negligence was limited to the fall of the invitee on *some* water or mud found in an entranceway on a rainy day.

*Kiley* more nearly resembles the case at bar than the other precedents relied upon by defendants. The plaintiff, although she did not feel any water under her feet, testified that she fell into a lot of water which was about one quarter of an inch deep. The court held that the evidence was not sufficient to warrant a finding that her fall was caused by slipping or by the wetness of the floor. In the instant case, however, plaintiff testified that as she entered the store she stepped into a large deep puddle which was slippery and that she "slid like on a sheet of ice." From such testimony it can reasonably be inferred that plaintiff's fall was caused by slipping because of the puddle.

When viewed most favorably to plaintiff the evidence here establishes that she fell by reason of stepping into a large and rather deep puddle of water which had accumulated at the entrance to defendants' market in a depression in a rough, slippery, sloping hardwood floor which had been there for at least sixteen years. Such a fact situation is more analogous to that found in *Royer* v. *Najarian*, 60 R. I. 368, and *Cardall* v. *Shartenberg's, Inc.*, 69 R. I. 97, than it is to those in the cases heretofore discussed. In each of

these cases the plaintiff fell on a sloping, wet, slippery terrazzo floor and in each case there was expert testimony that the kind of terrazzo used was dangerously slippery when wet.

In *Najarian* the action of the trial justice in nonsuiting the plaintiff was reversed and in *Cardall* this court held that the trial justice committed error in directing a verdict for the defendant.

While in the case at bar there was no expert evidence that the existence of the kind of puddle described constituted a dangerous condition, we are not prepared to say as a matter of law that plaintiff should be deprived of the right to have a jury pass on the question of whether the existence of a large puddle of water in a depression on a sloping and slippery floor in defendants' market, the doors to which had been left open despite the prevailing weather conditions, constituted a dangerous condition.

The defendants further contend that plaintiff did not meet the burden imposed on her to show that the condition complained of existed for such length of time as to reasonably warrant that it should have been discovered and removed by them or plaintiff warned thereof if they had been in exercise of due care.

If this contention is to be sustained, it must be on the basis of our decision in *Stapleton* v. *Hyman,* 69 R. I. 466. There the invitee slipped in the early evening on snow-covered ice on the steps leading to the invitor's front door. The evidence showed that snow, rain and sleet fell on the day prior to the accident, that there had been traceable snow on the day of the accident, and that the temperature throughout that day had been below freezing. The plaintiff was nonsuited, the court saying at page 471:

> "But there is no evidence as to when this condition became dangerous as such, or how long it had so remained prior to the accident. In the absence thereof the jury could not reasonably determine whether the alleged

condition had existed long enough for the defendants, if exercising reasonable care, to have discovered it and to have taken some measures to remove the danger or to warn the plaintiff thereof."

In reaching its conclusion, the court in *Stapleton* did not cite or refer to *Royer* v. *Najarian, supra,* where the invitee fell in the vestibule of the invitor's store between 8:30 and 9 o'clock of a rainy evening. In reversing the action of the trial justice who nonsuited the plaintiff, the court in *Royer* said at page 372:

"We must also bear in mind the fact that it had been raining all through that Saturday evening, so that it would be reasonable for the jury to infer that the defendants had notice of the wet condition of the pavement in the vestibules. There are indications in the transcript that the defendants had been operating the store for a long time with that same pavement in that entrance, so that they had plenty of time to learn of its slipperiness when wet. Taking all these things into consideration, we are of the opinion that the jury, from the evidence for the plaintiff, could reasonably have found that the defendants were guilty of negligence in not having some safeguard on that pavement at the time when the plaintiff fell."

Here, as in *Royer,* it had been raining all through the morning and defendants' store which they had been operating for sixteen years had been opened since 8 o'clock in the morning. One defendant had been at the store continuously since opening and the other since 10 o'clock that morning and the latter was seated at a checkout counter adjacent to the threshold and saw plaintiff fall. Here, also, as in *Royer,* there was no direct evidence of the length of time the accumulation of water had existed. Time alone is not the sole test of constructive notice. What may be a reasonable time within which to say a storekeeper should have known and remedied a dangerous condition will vary with the nature of the business, the size of the store and the number of customers who visit it, the location of the

dangerous condition and the opportunity of the storekeeper to see and observe it, how the condition came about and other circumstances of like import. *Langley* v. *F. W. Woolworth Co., supra.*

In the circumstances here the relevant inquiry is whether it was likely that the puddle was of momentary creation. In our opinion it can reasonably be inferred that the accumulation did not come into existence a matter of a few minutes prior to the arrival of plaintiff at the premises. If the only testimony were that the floor was damp, one might reasonably infer that such dampness was of momentary duration or had indeed been created by plaintiff herself. Contrawise, however, where the evidence viewed most favorably to plaintiff shows that under the conditions prevalent on the day of the accident a large puddle had formed in a depression on the market floor. It would be unreasonable to infer from the circumstances here that the condition complained of could not as a matter of law have been of sufficiently long duration to charge defendants with constructive notice thereof.

Whether it was of such duration was properly a question of fact for jury determination. To the extent that *Royer* and *Stapleton* are not reconcilable we are of the opinion that *Royer* should control. See *Lyle* v. *Megerle,* 270 Ky. 227; *Blake* v. *Great Atlantic & Pacific Tea Co.,* 266 Mass. 12.

The defendants finally contend that verdicts should have been directed in their behalf on the ground that plaintiff was guilty of contributory negligence as a question of law.

In *Floyd* v. *Turgeon,* 68 R. I. 218, 224, we said: "Contributory negligence is usually a question of fact and only rarely a question of law. Where the facts are such that a person of ordinary prudence would instantly perceive what to do or what to refrain from doing, it may become a question of law for the court." In *Royer* v. *Najarian, supra,* the evidence was such that we refused to hold that the plaintiff

was not in the exercise of due care as a matter of law and we so hold here.

Since all of the grounds upon which defendants rested their motions for directed verdicts have been found insufficient, their exceptions to the denials by the trial justice of such motions are overruled.

The defendants have also excepted to the action of the trial justice in permitting plaintiff to amend her declaration. She had proceeded to trial on a declaration containing three counts, in each of which was an allegation to the effect that defendants violated their duty to her in that they negligently permitted the market floor adjacent to the front entrance to remain wet, slippery, dangerous and unsafe "due to accumulation of water in said depression in the market floor * * *." The evidence presented by plaintiff was in support of such allegations.

The defendants, however, denied the existence of any such accumulation and through a civil engineer who was their last witness attempted to establish the impossibility thereof. The plaintiff thereupon and after both sides had rested moved to amend her declaration by adding thereto an additional count the substance of which was to substitute for the phrase referring to an accumulation of water which we have quoted above, the phrase "due to the presence of water on said market floor * * *."

The authority of the court to amend the pleadings in a case at any time is governed by the provisions of G. L. 1956, §9-6-2. Though the statute is remedial in nature, the broad authority conferred by it upon the trial court is not without limit. Whether the amendment should be allowed is a question upon which that court is required to exercise its judicial discretion, and an amendment to a declaration should be allowed where it does not substitute a new or different cause of action from that stated in the original declaration. *Ringuette* v. *Superior Court*, 88 R. I. 218. The ruling of the trial court in granting or denying leave to

amend in the exercise of such discretion will not be disturbed on review absent a clear showing that it was either improperly exercised or that there was an abuse thereof. *Wolf* v. *S. H. Wintman Co.*, 92 R. I. 470, 169 A.2d 903.

The defendants argue that the effect of permitting the amendment was to allow plaintiff to substitute a different theory upon which to proceed and thereby to deprive them of the opportunity to meet the allegations thereof. They further contend that the amendment constituted a complete departure from the breach of duty originally declared upon. The substance of the additional count, however, did nothing more than to make plaintiff's declaration conform to the evidence produced by defendants. They admitted the presence of water on the market floor, but denied that there was an accumulation large enough to be denominated as a puddle or that there was a depression in the floor in which a puddle could form.

The amendment, in our opinion, merely states more fully the matter set forth in the original declaration and does not substitute a different or new cause of action. It thus meets the test laid down in *Rose* v. *Standard Oil Co.*, 56 R. I. 272, 281, where the court stated: "The true test is whether the proposed amendment is a different matter or the same matter more fully or differently laid."

The defendants further contend that having granted plaintiff's motion to amend, the trial justice committed error in refusing to grant their motions to pass the cases. In *Sweeney* v. *McKendall*, 32 R. I. 347, we said: "* * * it is nevertheless within the power of the court in its discretion to permit an amendment, of course granting to the opposing party a continuance if he claims to be surprised thereby * * *." The defendants here did not move to continue the cases so as to give themselves the opportunity to demur or to plead to the amended declarations or to present additional evidence to meet the new matter set up in the

amended declarations, or to take such other actions as the circumstances might dictate and which might be possible without passing the cases. Instead they moved to pass them, which motions connote to us that they were requesting the trial justice to take the cases from the jury and leave them to be retried at some subsequent date.

While a claim of surprise made in good faith and not as a disguised attempt to hinder or delay a prompt trial of the case may be sufficient on a motion to continue, *Habershaw* v. *Palfrey*, 72 R. I. 448, it is not enough on a motion to pass. The movant on such a motion must show that his ability to defend has been impaired by the amendment and that the interests of justice require that the case be taken from the jury. See *Hulton* v. *Phaneuf*, 85 R. I. 406, 415.

In either event such motions are addressed to the sound judicial discretion of the trial justice whose rulings thereon will not be reversed by us unless it clearly appears that he abused his discretion or based his decision upon a mistake of law as to his powers. *Strzebinska* v. *Jary*, 58 R. I. 496.

Because argument of counsel before the trial justice on defendants' motions to pass is not in the transcript, we are deprived of the benefit of examining the reasons there urged in support thereof and can supply the deficiency only by assumption or by consideration of the arguments, oral and written, advanced before us. See *Harnedy* v. *Del Sesto*. R. I., 100 A. 391. Notwithstanding such absence we have in this instance carefully examined defendants' argument and find nothing therein which indicates any impairment of their ability properly to defend. Indeed the thrust of their argument is directed toward a situation where the motion to amend has been granted in order to allow the amending party to introduce new and different evidence from that properly admissible under the original declaration, rather than where as here the motion was granted in order to allow plaintiff to make her pleadings conform to evidence pro-

duced by defendants. Although there may be instances where in such circumstances a party's ability properly to defend is impaired and the denial of a motion to pass would constitute an abuse of discretion, the instant case is not one of them.

We now refer briefly to various exceptions of defendants to rulings of the trial justice on evidentiary questions.

We find no prejudicial error in the action of the trial justice in refusing to allow defendants to cross-examine a doctor called by plaintiff as to whether a fracture will sometimes cause a fall rather than a fall cause a fracture in an older person. While hypothetical questions not directly relevant or directly referable to issues raised on direct examination may be posed to an expert on cross-examination in order to test his learning and scientific intelligence, see *Carr* v. *American Locomotive Co.*, 26 R. I. 180, the scope thereof must necessarily be left to the sound discretion of the trial court which in this instance we find was not abused. 58 Am. Jur., Witnesses, §§841, 844, 2 Jones, Evidence (5th ed.) §437, p. 833.

The defendants also contend that the trial justice committed prejudicial error in admitting into evidence bills in the amount of $260 incurred for medicines prescribed by Dr. Albert F. Tetreault to alleviate a nervous condition from which plaintiff was suffering and for other medication prescribed by Dr. Maher for a shoulder pain. Neither physician testified and there is no direct evidence linking the medicines so prescribed to the injury suffered by plaintiff as a result of her fall. In such circumstances the trial justice committed error in admitting such bills and defendants' exception to such admission in the case of James C. McVeigh is sustained. *Gray* v. *Kagan*, 90 R. I. 398. Since the bills erroneously admitted were in the amount of $260 and only affected the amount of the damages in the case of plaintiff's husband, it does not follow that defendants are

entitled as of right to a new trial on all issues in both cases because of that error. We are of the opinion, however, that the verdict in the case of James C. McVeigh is excessive by $260.

We also find to be without merit defendants' contention that the trial justice was in error in sustaining plaintiff's objection to a question put to the civil engineer as to whether in his opinion the floor of defendants' market was safe from an engineering point of view. It would have been relevant to inquire from the witness, assuming his competency in such regard, as to whether such floor with an accumulation of water on it was safe from an engineering point of view, but the omission from the question of any reference to the wet condition of the floor on the day of the accident makes the question irrelevant.

The case of *Garberg* v. *Samuels*, 27 R. I. 359, relied on principally by defendants, is distinguishable. There the negligence complained of was that the defendants maintained a slippery pavement which sloped downward and the question allowed was whether a pavement of such construction and laid at such a pitch was dangerous. All of the elements which the plaintiff there maintained constituted the dangerous condition were included in the question; here one of the essential elements, namely, the accumulation of water, was omitted. The other cases cited by defendants have been examined by us and are also distinguishable.

The defendants next contend that the trial justice committed error in charging the jury as follows: "Now, what were the circumstances that were present there. They were in business, and they expected customers to come in. They expected people to walk upon that floor. There is evidence before you that there was a condition in the floor, namely, the pitch, the declination of that floor which you may conclude that the McCulloughs knew before this accident from

the evidence which you have heard; but I'll leave that up to you. There's the second circumstance—the declination or pitch in that floor."

The defendants contend that by the use of the above language the jury were instructed, in effect, that the maintaining of a pitched floor constituted negligence. In our opinion this argument is unsound and the portion of the charge in question is not reasonably open to such construction. When taken in context and considered not as if it stood alone, but as a part of a whole, it becomes clear that the pitch and declination of the floor referred to in the charge were merely commented on as one of a series of circumstances which, in combination with others likewise commented on, the jury could take into account in determining whether or not defendants were liable. See *Rivelli* v. *Annotti,* 60 R. I. 98.

We will finally consider defendants' exceptions to the denials of their motions for new trials, which motions were based on customary grounds. The substance of defendants' contentions, as we understand them, is, in effect, that the trial justice in his brief decision given orally from the bench did not make an exhaustive analysis of the evidence or state all of his conclusions on the evidence and the credibility of the witnesses. This he is not required to do. *Hulton* v. *Phaneuf, supra,* at page 416.

He did, however, treat on these questions sufficiently so that we are informed that in the exercise of his independent judgment he weighed the evidence and passed on the credibility of witnesses. In examining his entire decision in the light of the whole record as revealed by the transcript, rather than the isolated portions thereof taken by defendants out of context, we cannot say that he either misconceived or overlooked any material evidence or that he did not pass on the credibility of witnesses.

In the case brought by Rose E. McVeigh, all of the defendants' exceptions are overruled, and that case is remit-

ted to the superior court for entry of judgment for the plaintiff on the verdict.

In the case brought by James C. McVeigh, the defendants' exception to the admission of certain bills for medicines is sustained, all other exceptions are overruled, and the case is remitted to the superior court for a new trial on all issues unless the plaintiff shall, on a date to be fixed by the superior court, file in the office of the clerk of that court a remittitur of all of the verdict in excess of $2,740. If such remittitur is filed, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by the remittitur.

*James J. McAleer, Joseph V. Cavanagh,* for plaintiffs.

*Gunning & LaFazia, Bruce M. Selya, Raymond A. La-Fazia, Albert B. West,* for defendants.