229 A.2d 613.

STATE *vs.* RALPH DeCRISTOFARO.

MAY 12, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

194

JOSLIN, J. This is a criminal complaint charging that the defendant did on February 5, 1963 drive and operate a vehicle upon a public highway while under the influence of intoxicating liquor to a degree that rendered him incapable of safely operating said vehicle.[1] After conviction in a district court, the case was tried on appeal to a justice of the superior court sitting with a jury. Following a verdict of guilty, the defendant's motion for a new trial was denied and the case is now before us on his exceptions to the denial of that motion, to the refusal of the trial justice to direct a verdict in his favor and to charge the

---

[1] The offense charged in the complaint and warrant apparently is that created by G. L. 1956, §31-27-2, as amended by P. L. 1959, chap. 101, sec. 1.

jury as requested, and to certain evidentiary and other rulings.

The case turns on the testimony of Dr. Martin J. Shorr, the Cranston police physician, who was the state's chief witness at the trial. He was called to police headquarters in the early morning hours of February 5 to examine the defendant, who a short time before had been apprehended and taken into custody by the police while driving his motor vehicle along a public highway. At the trial, the doctor testified that upon arrival at the police station he introduced himself to the defendant and told him that he had been called by the police "* * * to examine him because of a question of drunken driving." The defendant not only refused to answer his questions or to engage in conversation with him, but in addition declined to submit to a physical or medical examination. Although thus deprived, albeit by defendant's actions, of an opportunity to conduct any of the tests customarily given by physicians to determine if lack of sobriety affects an operator's ability to drive a motor vehicle, Dr. Shorr nonetheless concluded that defendant was under the influence of intoxicating beverages to a degree which rendered him incapable of safely operating a motor vehicle. He premised that opinion on his observations, made over a tweny-minute period, that defendant had a strong odor of alcohol on his breath, that his face was flushed and his eyes bloodshot, that his clothing was "disorderly and mussed," that his jacket "was not worn properly on his shoulders" and "was pulled way over on one side," that instead of sitting erect in his chair he at times slumped over the armrest, that he appeared at other times to be sitting on his back rather than on the lower part of his spine, and that he was antagonistic and "cocky," and did not want to be examined. It was the combination of all these observations, the doctor said, which led him to conclude as a "reasonable medical certainty" that defendant was under the influence of intoxicating beverages to a degree

which rendered him incapable of safely operating a motor vehicle.

Decisive in this case are the rulings of the trial justice sustaining the state's objections to the following questions asked of Dr. Shorr on cross-examination. The first was:

"Q Doctor, how do you determine whether a man is under the influence of liquor, but not to a degree when he can safely operate a motor vehicle?

"Mr. Brodsky: I object, your Honor please. This is not the query in our court this morning.

"Mr. Giannini: This is in cross examination of his statement, your Honor, that this man by direct observation has been drinking to a degree which rendered him incapable of operating. Now I'm trying to test that opinion.

"The Court: Well, I'm going to sustain it. There are degrees and degrees. A man can start at the borderline, and if you reach this point he's just into the point where he cannot safely operate as the statute says. Then he can go in both directions, but still that center line is the one, from that point on, he's within the statute, then you can go to the other side of that line, and that can go in many degrees. Objection sustained, exception is noted on the record."

The second occurred during the following colloquy between the court, counsel and the witness.

"Q Doctor, do you agree that a man can be intoxicated but not to a degree which would render him incapable of safely operating on the highway?
"A Yes, I do.
"Q And he can be under the influence of intoxicating liquor to a degree which would render him incapable of operating a motor vehicle, isn't that so?
"A Yes.
"Q Now, unless you take a chemical test, will you tell us how you can do it by direct observation?

"Mr. Brodsky: Objection, your Honor. There is no such requirement.

"The Court: I'll sustain it, exception noted."

The defendant argues that these rulings deprived him of the opportunity to conduct a searching and probing cross-examination of an expert who had unequivocally expressed an opinion on the very issue which ultimately was to go to the jury. The questions, he argues, were well within the limits of the permissible cross-examination of an expert who had given an opinion. Although he does not cite, he relies in substance on *State* v. *Kozukonis*, 100 R. I. 298, at 302, 214 A.2d 893, at 896, where we said:

> "The rule permitting a trial justice in the exercise of his discretion to limit the scope of cross-examination within the reasonable bounds of matters inquired into during the direct examination, *State* v. *Campbell*, 95 R. I. 370, 187 A.2d 543, *York* v. *Ventilato*, 80 R. I. 192, 94 A.2d 820, has no application if the witness is an expert who has given opinion testimony. In such a case the latitude permitted is much wider. Within limits of relevancy the scope is expanded so as to allow questions touching matters testified to in direct examination as well as inquiries purposed upon testing the qualifications, skills or knowledge of the witness or the accuracy or value of his opinion, or the methods by which he arrived at or the data upon which he based his conclusion. *Carr* v. *American Locomotive Co.*, 26 R. I. 180, 58 A. 678; *McVeigh* v. *McCullough*, 96 R. I. 412, 192 A.2d 437."

In passing on the validity of these contentions and in determining whether or not the trial justice abused his discretion in unduly limiting the scope of the cross-examination of the state's key witness, we look at the questions not in isolation, but contextually as they relate to the offense charged and within the frame of the testimonial background.

At one time our statute made it unlawful for any person to drive or be in actual physical control of any vehicle while under the influence of intoxicating liquor. P. L. 1950, chap. 2639, art. XXIV, sec. 2(a). Under that statute, what degree of intoxication would support a conviction for driv-

ing under the influence, and whether it could be slight or was required to be of such a degree as to have an effect upon a person's judgment or his driving ability: these were questions for the court. *State* v. *Weeden*, 94 R. I. 1, 3. That statute, however, has since been amended, and defendant in this case was called upon to answer to a legislative enactment which prescribed an explicit test in terms of driving while "* * * under the influence of intoxicating liquor to a degree which renders him incapable of safely operating a vehicle * * *." The issue here, then, was not only whether the defendant was intoxicated, but to what degree and extent; and the ultimate concern was not with the quantities or the kinds of alcoholic beverages he had consumed, but with whether or not, because of imbibing, he had become incapable of safely operating his motor vehicle.

The state in attempting to establish guilt offered testimony from the police officers who had apprehended and taken defendant into custody. Both related the events they witnessed. Each described defendant, his appearance, and his actions. Neither ventured an opinion on his capability to drive. This was left to Dr. Shorr. He testified, not as a layman, but as an expert, and the question is how far the defendant should have been allowed to go in testing the value of his opinion. The factual data upon which that opinion was premised would have permitted, at least in those states where the issue has been decided,[2] a conclusion from an ordinary layman on whether or not defendant was intoxicated. Here, however, the doctor testified not only that defendant was intoxicated, but that he was so intoxicated as to be unfit to operate a motor vehicle.

It was to this facet of the doctor's testimony that the cross-examiner was pointing his attack when he was stopped by the rulings of the trial justice from proceeding further.

[2]*People v. Eastwood*, 14 N. Y. 562 (1856); *People v. Monteith*, 73 Cal. 7, 14 P. 373; *Pierce v. State*, 173 Neb. 319, 113 N. W.2d 333.

The witness' opinion on the defendant's driving ability had been premised upon observations rather than upon a scientific test beyond the competence of an average layman either to administer or to interpret; and he had testified generally that a person's ability to operate a motor vehicle while under the influence of alcoholic beverages hinged on the degree or extent of his intoxication. Notwithstanding such testimony, inquiry by defendant was blocked when the witness was asked what determinants he had used in reaching the conclusion, and whether it was possible to determine fitness to operate upon observations rather than upon chemical tests.

The effect of those rulings was to deny the cross-examiner a reasonable latitude within which he might pursue attempts to place the witness in a setting where his expertise would be put to test. At the same time it prevented defendant from laying a possible foundation for rebutting or destroying the predicate upon which the expert's opinion rested. The jury were thereby deprived of the opportunity to learn what standards or criteria the witness used in arriving at his conclusion and from estimating the value of that conclusion by measuring the observations testified to against those criteria. In our judgment prejudice ensued from these rulings. 3 Wigmore, Evidence §992, p. 630; *State* v. *Greene,* 74 R. I. 437; *State* v. *Baron,* 65 R. I. 313. This is particularly so in a case such as this where there is a coincidence and an identity between the expert opinion being attacked and the factual issue upon which ultimately the jury will be called upon to rest their verdict.[3]

---

[3]In driving-under-the-influence cases our approach is flexible and we permit an expert to testify on the ultimate issue so long as his opinion will appreciably assist the jury in the performance of their function. *State* v. *Kozukonis, supra.* Whether the doctor's opinion was properly admitted in this case is not before us since it came in without objection.

200

The issues already discussed being dispositive make unnecessary any consideration of the defendant's other exceptions.

The defendant's exceptions to the evidentiary rulings hereinbefore considered are sustained, his remaining exceptions are not reached, and the case is remitted to the superior court for a new trial.

*Herbert F. DeSimone*, Attorney General.

*Donald P. Ryan*, Special Assistant Attorney General, for State.

*Anthony A. Giannini*, for defendant.