304 A.2d 44.

ALBERT GONSALVES *et ux. vs.* FIRST NATIONAL STORES, INC.

MAY 2, 1973.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J.   A husband and wife brought this civil action in the Superior Court to recover damages for injuries allegedly sustained when the wife slipped and fell in a store owned and operated by the defendant.   When the jury was unable to reach a verdict, the trial justice, who earlier in the proceeding had reserved ruling on the defendant's motion for a directed verdict against each plaintiff, granted the motion.   The plaintiffs have appealed.   Except where otherwise indicated we refer only to the wife's action, but what we say with respect to it applies equally, wherever appropriate, to the husband's.

At about 3:30 p.m. on October 11, 1967, plaintiff, a customer at defendant's store, was on its premises.   She was proceeding along the main aisle in a normal manner and was carrying items which she intended to purchase.   As she neared the check-out counter she slipped and fell on a foreign substance which was in clear view of the check-out girl at register number one.   Neither plaintiff nor her witnesses were able to identify the substance with certainty, nor did they know how it happened to be on the floor, who had put it there, or how long it had remained.   They described it, however, as grayish-white in color and approximately two to two and one-half inches in diameter, and testified that it seemed to be embedded in the tile floor surface, that it looked like white soap or hardened ice cream, that it was "hard and caked," "gooky," and "whitish underneath" where her heel had gone through it.

According to the store manager, business was light at the time of the accident, there then being only fifteen to twenty customers in the store and only seven employees in the sales area.   He also testified that the floor was

washed once a week by an independent contractor; that customarily it was swept by store employees on business days at 12 p.m., 3 p.m. and 6 p.m.; that store employees mopped up and took care of "spills" whenever feasible; and that he was unable to say whether the floor had been swept or mopped on the day of the fall.

Finally, there is evidence which to some degree is contradictory to that already related. It came primarily from a cashier who was on duty when plaintiff fell. She testified that a minute or two before the fall she had been handed a container of cottage cheese by a customer who requested that it be returned to stock. Shortly after the accident the cashier routinely checked the container before returning it to the shelf, and for the first time noticed that some cottage cheese appeared to be missing from the carton. She reported this to the manager who checked the carriages used by customers to transport their purchases from the shelves to the check-out counter. He found that one carriage had cottage cheese on its bottom rung, and then after investigation concluded that the substance upon which plaintiff had slipped and fallen was cottage cheese.

The posture in which the case comes here requires us, as it did the trial justice when he considered the motion for a directed verdict, to view the evidence, and the inferences to which it is reasonably susceptible, in the light most favorable to plaintiff and without regard to its weight or the credibility of the witnesses. *William T. Young, Inc.* v. *Simpson*, 111 R. I. 12, 14-15, 298 A.2d 526, 528 (1973); *Enos* v. *W. T. Grant Co.*, 110 R. I. 523, 525, 294 A.2d 201, 202 (1972); *D'Andrea* v. *Sears, Roebuck & Co.*, 109 R. I. 479, 484, 287 A.2d 629, 631 (1972).

The facts so viewed indicate that this is a garden variety "slip and fall" case where, in the circumstances described, defendant, although not an insurer of plaintiff's safety nor under any duty to anticipate and protect her against the

unlikely or improbable, was required to use reasonable care to keep and maintain its premises in a safe condition for the purpose of the invitation extended to her. And plaintiff, in order to escape a directed verdict, was required to produce evidence that her fall was attributable to defendant's and not to her own negligence; that the condition of the premises which caused her fall had existed sufficiently long to give defendant reasonable notice, actual or constructive, of its existence; and that defendant, after having acquired such notice, negligently failed to remedy the condition or warn plaintiff of its existence. *Gleason* v. *Almac's, Inc.,* 103 R. I. 40, 234 A.2d 350 (1967); *McVeigh* v. *McCullough,* 96 R. I. 412, 192 A.2d 437 (1963).

It remains only to relate the applicable law to the facts of this case. When the trial justice performed that function he concluded — and defendant in oral argument before us follows his lead — that there was neither direct nor circumstantial evidence from which an inference could reasonably be drawn that defendant had notice, actual or constructive, that its premises were not in a safe condition for customers who might enter thereon. Accordingly, he directed a verdict for defendant.

To support that action the trial justice relied primarily, as does defendant, on *Gleason* v. *Almac's, Inc., supra.* In that case, the plaintiff slipped on a roll of film which was on the floor in one of the check-out aisles of the defendant's store. There was no direct evidence of the length of time the film had been there, nor was there anything in its appearance, condition or any other circumstance which reasonably suggested that it had been there for a sufficient length of time to give the defendant constructive notice of its presence. The absence of any such evidence, direct or inferential, was, of course, fatal to the plaintiff's case and justified the direction of a verdict for the defendant.

While there may be parallels between *Gleason* and this

case, we believe that a more analogous fact situation can be found in *Priestley* v. *First National Stores, Inc.,* 95 R. I. 212, 186 A.2d 334 (1962). There, the plaintiff slipped on a "crushed banana" as she was walking through the entranceway to the defendant's store. While neither she nor her witnesses were able to say how the banana got there or how long it had been there, they testified that it looked "as though people had been walking on it" and they further described it as "all mashed up on the ground," "dirty brown, like it had been there quite awhile," and "very badly squashed, flattened, dark color, brownish black." *Id.* at 213, 186 A.2d at 335.

In *Priestley,* the appearance and condition of the foreign substance upon which the plaintiff fell, without more, furnished an adequate basis upon which the jury could reasonably draw an inference that the defendant knew or should have known that a dangerous condition existed at the entrance to the store, and that it had existed there for a sufficiently long period of time to warrant something being done about it.

Although the absence of any evidence as to the appearance or condition of the roll of film in *Gleason* made it impossible in that case to draw the kind of inference relied on in *Priestly,* the same cannot be said about this case. Here the facts, viewed in the light most favorable to plaintiff, indicate that the foreign substance responsible for the slip and fall was embedded in a tile floor in the most heavily traveled area of defendant's store. It may have been cottage cheese, but it was "hard and caked" and "gooky," grayish-white in color, and looked like white soap or ice cream which had hardened. Certainly, if *Priestly* is to be followed, that description reasonably yields to the inference that the foreign substance had remained at a place in the store where a customer was apt to step on it sufficiently long to give defendant constructive notice of its existence.

On that view of the facts a jury could reasonably conclude that defendant thereafter negligently failed to remedy the danger or warn plaintiff of its presence or existence.

The possibility that other inferences less favorable to plaintiff could also have been drawn from that description, or that there was direct testimony from defendant's witnesses indicating that the foreign substance was cottage cheese which had been dropped on the floor by a third party less than two minutes prior to plaintiff's fall, were evidential matters which should not have concerned the trial justice. The question before him was whether to grant defendant's motion for a directed verdict. In deciding that question he should have resolved any conflicts in the evidence in plaintiff's favor. *Willam T. Young, Inc.* v. *Simpson; Enos* v. *W. T. Grant Co.; D'Andrea* v. *Sears, Roebuck & Co.*, all *supra.* Had he done so, he would not have directed a verdict for the defendant. *Priestley* v. *First National Stores, Inc., supra.*

The plaintiffs' appeal is sustained, the judgment appealed from is reversed, and the case is remitted to the Superior Court for further proceedings.

Mr. Chief Justice Roberts did not participate.

*Gelfuso and Cappalli, Inc., A. William Gelfuso, Richard A. Cappalli, Paul A. Sassi,* for plaintiffs.

*Roberts & Willey, Inc., Bruce G. Tucker,* for defendant.