330 A.2d 416.

GILDA LOMBARDI *vs.* THE DRYDEN CORP.

JANUARY 17, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. In this negligence action the plaintiff seeks damages sustained as the result of her falling down a flight of stairs in a building owned by the defendant. A jury trial was begun in the Superior Court. At the conclusion of the plaintiff's evidence, the trial justice granted the defendant's motion for a directed verdict and this appeal ensued.

The grant of the directed verdict requires us, as it did the trial justice when he considered defendant's motion, to view the evidence and the inferences of which it is reasonably susceptible in the light most favorable to plaintiff without giving any consideration to its weight or the credibility of witnesses. *Gonsalves* v. *First Nat'l Stores, Inc.,* 111 R. I. 438, 304 A.2d 44 (1973); *Lamont* v. *Central Real Estate Co.,* 110 R. I. 438, 294 A.2d 195 (1972).

The plaintiff, in order to pass muster on a motion for a directed verdict, was required to produce evidence indicating that her fall was attributable to defendant's negligence and not her fault; that the condition causing her fall had existed for a sufficiently long period of time so as to afford defendant reasonable notice, actual or constructive, of its existence; and that defendant, after having acquired such notice, failed to remedy the condition or warn plaintiff of its existence. *Gonsalves* v. *First Nat'l Stores, Inc., supra; Gleason* v. *Almac's, Inc.,* 103 R. I. 40, 234 A.2d 350 (1967); *McVeigh* v. *McCullough,* 96 R. I. 412, 192 A.2d 437 (1963).

Having established the guidelines, we need only relate them to the evidence adduced by plaintiff.

The fall occurred in the early afternoon of March 18, 1969. The plaintiff, her son, her daughter-in-law, and an accountant had gone to defendant's premises to confer with plaintiff's brother. He is a tenant of defendant, on whose premises he operates a tailor shop. The quartet had visited the brother to obtain his approval of some family real estate transaction. The stairway leading from the second floor to the first consisted of two flights of stairs and a landing. Each flight consisted of eight steps. A person leaving the second floor would descend the first flight, turn left, cross over the landing to the second flight and continue his descent to the first floor. The stairs were made of cement. A corrugated metal strip measuring

some 5 inches in width ran across the entire length of the leading edge of each of the step's treads.

The plaintiff testified that as she descended the initial flight of stairs, the heel of her right shoe became embedded in a hole. This event caused her to part company with the shoe, travel through the air in a somewhat twisting fashion, slam into a wall, and finally come to rest on the landing. After the mishap, plaintiff was taken to an adjoining parking lot and driven by automobile to the offices of another brother, a physician. Upon helping her up, her companions noticed the absence of the right shoe. The daughter-in-law told of how she saw the shoe, its heel in a "little hole" "more or less" wedged against the metal strip, with the toe of the shoe pointed toward the wall. She could not identify the specific step but said it was one of those in the lower half of the upper flight. The only description of the treads and the hole was given by the daughter-in-law. The hole, she said, was 6 inches in length and a quarter of an inch in depth. While she gave no dimension to its width, she stated that the heel of the shoe was immediately adjacent to the inner edge of the stair tread. She described the cement portion of the stairs and the interior of the hole as being "neutral" or "natural" in color. The hole's interior was pictured thus: "It wasn't smooth like the finished part of the cement. It was like how cement looks on the inside. You could almost see like little pebbles in it."

The trial justice's grant of defendant's motion was based on the absence of any evidence justifying a reasonable inference that defendant was or should have been aware of the hole's presence. The plaintiff concedes that this is not a case of a foreign substance whose time spent on the floor or stairs can be measured by the fact that it is a dirty banana peel, or a crushed grape, or a mashed, gritty piece of cream cheese, or a puddle of water that represents an

accumulation of raindrops in a depressed floor surface. Nevertheless, she faults the trial justice's alleged unawareness of what is going on in the world about him because, she states, it is a matter of common knowledge that "cement does not wear overnight."

While the cement industry may be appreciative of plaintiff's unsolicited testimonial, we shall not invoke the doctrine of judicial notice to supply the evidentiary crutch that is so urgently needed by plaintiff if her case is to survive defendant's motion. The cement in question was part of a common stairway that was open to all who might come onto defendant's premises. The building is located in downtown Pawtucket. To take judicial notice in the circumstances of this case would substitute speculation for evidence. Who knows who preceded plaintiff and her family into the premises and who knows when and why the hole was made? Its presence could have been the work of a vandal who, moments before plaintiff's departure from the tailor shop, might have decided to leave a concrete manifestation of his discontent against the establishment by making a hole in the cement stairway. While other courts have taken judicial notice of the following qualities and propensities of cement: "slippery"[1] when placed on a slanting incline, "cracks"[2] when exposed to heat, contains "lime,"[3] and "strong in resisting compression strains and weak in withstanding tensile strains,"[4] we cannot extend a similar accommodation to plaintiff.

[1]*Betts* v. *City & County of San Francisco,* 108 Cal. App.2d 701, 239 P.2d 456 (1952).

[2]*Kirkpatrick* v. *Reese,* 219 Ark. 124, 240 S.W.2d 1 (1951).

[3]*Baker* v. *Stewart Sand & Material Co.,* 353 S.W.2d 108 (Mo. App. 1961).

[4]*Turner* v. *Lauter Piano Co.,* 248 F. 930 (3d Cir. 1918).

There is no evidence from the description of the hole's interior given by plaintiff's daughter-in-law that would justify any reasonable inference as to the extent of its duration. The daughter-in-law gave no indication that the hole contained any dust, debris, or any other substance which would show that it had served for some time as a collection station for the usual litter found on a stairway. There is absolutely no evidence that the hole was there long enough to justify charging defendant with notice of its existence. *Lapierre* v. *Greenwood,* 85 R. I. 484, 133 A. 2d 126 (1957).

Failing on the question of the directed verdict, the plaintiff nevertheless contends that the trial justice erred when he sustained defense objections to a series of questions asked of her brother relating to the condition of the stairway before the time of her fall. This phase of the appeal must fail because of her failure to make an offer of proof as to what she hoped to prove by this line of inquiry. *Enos* v. *W. T. Grant Co.,* 110 R. I. 523, 294 A.2d 201 (1972); *Manning* v. *Redevelopment Agency,* 103 R. I. 371, 238 A.2d 378 (1968).

The plaintiff's appeal is denied and dismissed.

*Anthony E. Grilli, Paul J. DiMaio,* for plaintiff.

*Higgins, Cavanagh & Cooney, John T. Walsh, Jr.,* for defendant.