Gabriel **CASADOR** et al.

v.

**FIRST NATIONAL STORES, INC.,**
et al.

No. 81–56–Appeal.

Supreme Court of Rhode Island.

June 29, 1984.

A. Larry Berren, Lovett & Morgera, Ltd., Providence, for plaintiffs.

Guy J. Wells, Gunning, LaFazia & Gnys, Inc., Providence, for defendants.

## OPINION

KELLEHER, Justice.

This is a Superior Court negligence action in which the trial justice, after receiving a jury verdict of approximately $20,000 in favor of the plaintiff,[1] granted the defendant's motion for a directed verdict. Subsequently, the trial justice granted the defendant's motion for a conditional new trial and rejected the plaintiff's motion for

---

1. The father instituted this suit. As next friend of his son, he sought damages for the injuries, pain, and suffering sustained by Julio as well as the consequential damages the father incurred in the treatment of Julio's injuries. The jury awarded consequential damages in an amount just in excess of $5,600 and close to $19,500 for the injuries sustained and the pain and suffering. The jury then reduced the award by 25 percent. This figure represented the percentage of negligence ascribed by the jury to Julio. A named defendant besides First National was the owner of the real estate, Ernest D. Young, Sr., who leased the property upon which First National built its market. His motion for a directed verdict was granted, and no appeal was taken from that determination.

either an additur or a new trial limited to the issue of damages.

On May 10, 1977, one day after a freak May snowstorm had visited Rhode Island, First National Stores' Pitman Street, Providence, supermarket was in operation as usual. The market itself, located in a large building set back a considerable distance from Pitman Street, was bordered on three sides by an extensive asphalt parking lot intended to serve the needs of its clientele. The parking lot, as it approaches the front of the market, gradually slopes upward to the point where it meets a cement walkway that extends along the entire front of the building. An overhang on the front of the building serves in inclement weather as a shelter against precipitation for those who wait while someone drives up in the family car to transfer the shopping from the shopping cart to the automobile.

At approximately 6 p.m. on May 10, 1977, ten-year-old Julio Casador and his thirteen-year-old sister left their Ives Street home at their father's request to go to the market to buy some baby food. At this time the father was incapacitated by a back injury and the mother was at work. Julio and his sister rode their bicycles to nearby Pitman Street and then proceeded easterly along the sidewalks toward the market. Julio was riding a one-week-old five-speed bike equipped with hand brakes. It was raining that May day, and this was Julio's first opportunity to ride his bike under these conditions, although he had ridden a friend's bike in similar circumstances at another time.

As Julio and his sister made their way through the market's parking area, they noticed that cars were parked bumper to bumper across the front of the store. As Julio rode toward the right-hand corner of the store, he noticed that a large white van was the last car in the line. As he made a left-hand turn to come up onto the cement walkway, he became aware that the van protruded at least five feet onto the walkway itself. Julio then applied his brakes and turned to his right to move away from the van. At this point, the bike slid on some slush that was on the walk, and before the rider could regain control of his bicycle, its handlebars came in contact with a large plate-glass window, one of many that line the front of the store. The window shattered, and when Julio looked down at his leg, he saw, in his own words, "blood pouring out like a faucet." Julio suffered severe injuries, including a laceration of the femoral artery and vein. Fortunately for Julio, a physician and medical intern who were customers in the store rendered first aid, and their expertise probably saved the youngster's life.

The trial justice, in granting defendant's motion for a directed verdict, classified the van's presence and the inhibited free access to the walkway as a "condition" rather than a "cause" of Julio's misfortune. In *Long v. Ponca City Hospital, Inc.*, 593 P.2d 1081, 1086 (Okla.1979), the court distinguished "cause" from "condition" by the presence or absence of the element of foreseeability. Thus, if it was foreseeable that a defendant's negligent act would result in injury, the Oklahoma court would consider such an act a "cause" rather than a "condition"; but if it was not foreseeable that an injury could arise, the negligent act would be considered a "condition" rather than a "cause."

> Prosser, on the other hand, believes that "the distinction is now almost entirely discredited. So far as it has any validity at all, it must refer to the type of case where the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes. But even in such cases, it is not the distinction between 'cause' and 'condition' which is important, but the nature of the risk and the character of the intervening cause." Prosser, *Handbook of the Law of Torts*, § 42 at 248 (4th ed. 1971).

This court embraced this view in *Roberts v. Kettelle*, 116 R.I. 283, 295, 356 A.2d 207, 215 (1976), by holding that

"an intervening act will not insulate a defendant from liability if his negligence was a concurring proximate cause which had not been rendered remote by reason of the secondary cause which intervened. The test for remoteness is whether the intervening act could reasonably have been foreseen as a natural and probable result of the original act of negligence of the defendant. If it could have been so foreseen, the intervening negligence is not so remote as to prevent the original act from being considered at law as merely a concurring cause of the injury."

In disposing of a motion for a directed verdict, the trial justice must view the evidence in the light most favorable to the plaintiff—here, as an individual and as next friend of his son—drawing from such evidence all reasonable inferences that would support the plaintiff's claim, while refraining from weighing the evidence or passing upon the witnesses' credibility. *Katz v. Prete*, R.I., 459 A.2d 81 (1983). A verdict should not be directed for a defendant if, on any reasonable view of the evidence, the jury could find for the plaintiff. *McVeigh v. McCullough*, 96 R.I. 412, 192 A.2d 437 (1963).

Here, there is no question that once defendant opened the doors of its Pitman Street facility and invited the public to do business at its store, it also assumed the obligation to use reasonable care to keep and maintain those premises in a safe condition for those responding to the invitation. *Gonsalves v. First National Stores, Inc.*, 111 R.I. 438, 304 A.2d 44 (1973).[2] Accepting this invitation on behalf of his father on May 10, 1977, was young Julio.

The trial justice described the presence of the van on the cement walk as a "condition" and was of the belief that there was no inherent defect in the premises for which defendant could be held liable. In finding an absence of any defect, the trial justice obviously overlooked the fact that had defendant placed a curbing along the seam where the asphalt meets the walk in order to keep the motorist away from the overhang, the walkway would have been kept free of bumper-to-bumper parkers, one of whom proved to be an insurmountable obstacle as Julio made his way to the market's front door.

In granting the defendant's motion for a directed verdict, the trial justice was well aware of the concurrent-proximate-cause doctrine enunciated in *Kettelle* and repeated many times elsewhere.[3] In *Madsen v. Metropolitan Life Insurance Co.*, 90 R.I. 176, 156 A.2d 203 (1959), it was noted that the doctrine of the law of the case does not apply to a review of a denial of a motion for a directed verdict. Kent, in his treatise on Rhode Island Practice, lauds this result, commenting:

"If the defendant's motion for a directed verdict is erroneously denied by the trial judge because of a misconception as to the governing law, a judgment for the plaintiff should not go unreversed simply because the judge has charged the jury in accordance with the same misconception without an additional objection by the defendant. The defendant has lost his right to assign as error the faulty instruction, but by his motion for a directed verdict he has preserved the question of correctness of the submission of

2. The trial justice in his charge relied on the *Gonsalves* case. Counsel obviously forgot to remind the trial justice that in *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975), this court ruled that the common-law status of an entrant—be it invitee, licensee, or trespasser—on the land of another would no longer be determinative of the degree of care owed by the owner; but, rather, the issue to be resolved will be whether the owner has used reasonable care for the safety of all persons reasonably expected to be upon his premises, with the status of the entrant being relevant on whether the visitor's presence was to be reasonably anticipated.

3. *State v. Dionne*, R.I., 442 A.2d 876 (1982); *S.M.S. Sales Co. v. New England Motor Freight, Inc.*, 115 R.I. 43, 340 A.2d 125 (1975); *Aldcroft v. Fidelity and Casualty Co. of New York*, 106 R.I. 311, 259 A.2d 408 (1969); *Denisewich v. Pappas*, 97 R.I. 432, 198 A.2d 144 (1964); *Reek v. Lutz*, 90 R.I. 340, 158 A.2d 145 (1960).

the case to the jury." 1 Kent, *R.I. Civ. Prac.* § 51.4 at 377–78 (1969).

The same may be said for plaintiff in this case. Sometime either before trial or as it progressed, counsel for both litigants, acting pursuant to Rule 51(b) of the Superior Court Rules of Civil Procedure, suggested instructions to be incorporated within the trial justice's charge. After the charge had been completed, the trial justice put on the record the disposition of the earlier requests and then noted the exceptions of trial counsel to these actions.

He then asked plaintiff's trial counsel if he had any other exceptions to the charge as given. Counsel responded that he would like to object to the trial justice's failure to charge the jury concerning "concurrent or joint negligence." The trial justice then said, "First of all, * * * there was no request that I recall for that type of a concurrent charge." Counsel answered, "That is correct, your Honor." The trial justice continued, "Secondly, as I view the evidence, I have a parked van. Under my interpretation of the evidence, a parked van in a place where it ought not to have been does not create a negligent situation. It creates a condition, not a cause." The trial justice then noted plaintiff's objection.

█ We are well aware of Rule 51(b)'s requirement for the submission of written suggestions in regard to the principles of law to be included within the charge. However, it is clear from the trial justice's remarks that he was fully aware of the principle in issue; and had a written embodiment of the request been submitted, it would have been rejected out of hand. It is our belief that the spirit, if not the letter, of Rule 51(b) has been complied with, and the plaintiff's objection to the trial justice's refusal to instruct the jury on the doctrine of concurrent proximate cause is sustained.

The plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for a new trial.[4]

WEISBERGER, J., did not participate.

---

**4.** In granting the defendant's conditional motion for a new trial, the trial justice rejected the testimony of Julio and his sister as to the extent the vehicles in front of the store were encroaching on the cement walkway. The plaintiff has failed to persuade us that the trial justice, in discharging his duties in considering the conditional motion, misconceived or overlooked material evidence or was otherwise clearly wrong. *Cannone v. New England Telephone and Telegraph Co.,* R.I., 471 A.2d 211 (1984).