Evelyn PANDOZZI et al.

v.

The PROVIDENCE LODGE NO. 14 Of the BENEVOLENT AND PROTECTIVE ORDER OF ELKS.

No. 82–530–Appeal.

Supreme Court of Rhode Island.

July 31, 1985.

Lori C. Silveira, Frank N. Ray, Daniel J. Murray, Letts Quinn & Licht, Providence, for plaintiff.

Ruth DiMeglio, Joseph A. Kelly, Carroll Kelly & Murphy, Richard A. Skolnik, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal brought by the plaintiffs from a judgment entered in the Superior Court granting the defendant's motion for a directed verdict. We affirm the judgment of the Superior Court. The facts in this case are as follows.

On May 10, 1969, plaintiff Evelyn Pandozzi attended a bingo game held by defendant Elks Lodge on the lodge premises located at 645 Elmwood Avenue in the city of Providence. Bingo games were held there weekly and were conducted and operated by the lodge and its members. The bingo games were open to the public, including Mrs. Pandozzi.

On the evening in question, bingo play began at approximately 7:30 p.m. The deposition of Antonio Frank Delmonico (Delmonico), who died prior to trial and was therefore unavailable to testify, was admitted into evidence at trial. Delmonico stated that he had the duty of passing out bingo cards to the players in the front half of the room. Delmonico, whose task of

supervising bingo play was performed on a volunteer basis, stated that it was customary for the players to use small markers (chips) to mark their bingo cards. He testified that besides handing out bingo cards, he also had the duty of patrolling his assigned area for stray markers that had fallen on the floor, which markers he would then kick under a table.[1] He stated, however, that the markers would usually fall from the laps of the players onto the floor under the tables and that on this particular occasion he had had to kick only "a couple" of markers out of the aisle and under a table.

Bingo play ended on the evening of May 10, 1969, shortly after 10 p.m., at which time Mrs. Pandozzi proceeded up the center aisle to the front of the room; as she turned right to go to the ladies' room, she slipped and fell. Mrs. Pandozzi testified that as she was walking up the aisle, she felt something under her shoe; suddenly her feet flew out from under her, causing her to land on her back on the floor. She stated that while still on the floor she noticed a number of bingo markers on the floor under the bench. Delmonico, who was standing approximately three feet from the spot where Mrs. Pandozzi fell, stated that although the floor in that area was somewhat dirty, there were no markers on the floor either at that spot or in the aisle up which Mrs. Pandozzi had walked. Mrs. Pandozzi testified that, following her fall, she was limping as she left the lodge. The next morning she was in such pain that her husband had to take her to the hospital for an examination and X-rays.

In their complaint filed in the Superior Court on December 2, 1969, against the Elks Lodge, Mrs. Pandozzi and her husband asserted that the lodge had failed to use reasonable care in its policing and cleaning up of the area where bingo was being played. They asserted that the failure of the lodge to maintain the area in a

safe condition had resulted in Mrs. Pandozzi's fall, her subsequent severe, permanent injuries, and her loss of ability to perform tasks she previously could perform. Mr. Pandozzi brought action to recover for his wife's medical expenses and for the loss of her services.

Following preliminary proceedings that are not relevant to this appeal, a jury trial was conducted in the Superior Court September 20–22, 1982. Subsequent to plaintiffs' presentation of the evidence, defendant moved for a directed verdict. The trial justice granted the motion, stating that there was "insufficient evidence to permit a reasonable inference that the Elks [Lodge] was negligent."

The plaintiffs then filed a notice of appeal with this court on October 7, 1982. In their appellate brief, plaintiffs set forth a single issue in support of their appeal: the trial justice had failed to view the evidence in the light most favorable to the plaintiff—and if the trial justice had not overlooked material evidence in the case, he would have proceeded with a full trial on the merits. We disagree with plaintiffs' assertion and uphold the decision of the Superior Court for the following reasons.

■ This court's review of a directed verdict requires that we examine the evidence as did the trial justice when considering defendant's motion, that is, that we review the evidence in the light most favorable to the nonmoving party, without taking into account the weight of the evidence or the credibility of witnesses, and draw all reasonable favorable inferences therefrom. *Taft v. Cerwonka*, R.I., 433 A.2d 215, 219 (1981); *Lombardi v. Dryden Corp.*, 114 R.I. 202, 203, 330 A.2d 416, 417 (1975); *Gonsalves v. First National Stores, Inc.*, 111 R.I. 438, 440, 304 A.2d 44, 45 (1973). Subsequent to the presentation of plaintiffs' evidence, the trial justice must send the case to the jury unless he determines that there are no issues of fact presented

---

[1] For purposes of this opinion we are assuming that Delmonico was an agent of defendant lodge.

"upon which reasonable [persons] might draw conflicting conclusions." *Montuori v. Narragansett Electric Co.*, R.I., 418 A.2d 5, 9 (1980); *McVeigh v. McCullough*, 96 R.I. 412, 418, 192 A.2d 437, 441 (1963).

This standard makes it necessary that the nonmoving party establish three factors in order to avoid a grant of the motion for directed verdict. The plaintiffs, in this case, must establish the following:

1. Mrs. Pandozzi's fall was due to some negligence on the part of defendant and not merely the result of Mrs. Pandozzi's own negligence.

2. The condition causing Mrs. Pandozzi's fall had existed for a sufficient length of time so that defendant knew or should have known of the dangerous condition.

3. Although defendant had notice of the dangerous condition, it failed either to remedy the situation or to warn Mrs. Pandozzi of its existence.

*Piascik v. The Shepard Co.*, 118 R.I. 425, 427, 374 A.2d 795, 796 (1977); *Lombardi v. Dryden Corp.*, 114 R.I. at 203, 330 A.2d at 417; *Gonsalves*, 111 R.I. at 441, 304 A.2d at 45–46.

In the case at bar, the trial justice found that although it could reasonably be inferred that what plaintiff had stepped on was a bingo marker, there was no evidence that any agent or officer of defendant had caused the marker to be dropped on the floor or had known of the presence of the marker and negligently failed to remove it. The trial court relied on the similar findings made in *Lombardi v. Dryden Corp.*, 114 R.I. 202, 330 A.2d 416 (1975) (in which the plaintiff failed to prove notice on the part of the defendant of a defect in a cement stair, which defect caused the plaintiff's fall), and *Gleason v. Almac's, Inc.*, 103 R.I. 40, 234 A.2d 350 (1967) (in which the plaintiff failed to show the defendant's negligence or notice to the defendant of the roll of film on the floor on which the plaintiff had stepped, causing her to slip and fall), and held that

"plaintiff here has failed to show any evidence from which the jury could infer that the chip was on the floor through the negligence of the defendant, or being there, that the defendant failed to remove it after having had actual or constructive notice of its location in the aisle."

As noted in the facts above, defendant's agent, Delmonico, testified that he had seen no bingo markers in the aisle at the time of Mrs. Pandozzi's fall, that most markers that fall on the floor during an evening fall under the tables, and that he had had to kick only a couple of markers out of the aisles and under the tables during this particular evening. Additionally, although Mrs. Pandozzi testified that she had felt something under her foot before she slipped, and although the trial justice found that it could be reasonably inferred that she had slipped on a marker, she presented no evidence of knowledge, actual or constructive, on the part of defendant or its agent, Delmonico, of the presence of the marker in the location where Mrs. Pandozzi had fallen.

Although the plaintiffs in their brief assert that the trial justice overlooked evidence of the defendant's negligence, our review of the testimony presented by the plaintiffs has disclosed no evidence of knowledge, actual or constructive, of a dangerous condition on the defendant's part. When no evidence of the defendant's negligence exists, the granting of a directed verdict by the trial justice is legally required, as it was in this case.

For the reasons stated, the plaintiffs' appeal is denied and dismissed, and the judgment of the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.