294 A.2d 195.

## ELEANOR LAMONT *et al. vs.* CENTRAL REAL ESTATE COMPANY, INC.

JULY 26, 1972.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

KELLEHER, J. The plaintiffs are husband and wife. The defendant owns an office building situated at 112 Mathewson Street in downtown Providence. The plaintiffs instituted this negligence action to recover damages sustained as the result of the wife falling down a flight of stairs located at the Mathewson Street address. Trial was held before a Superior Court jury which awarded the wife $43,300 and returned a verdict on the husband's claim for consequential damages in the amount of $1,700. The trial justice denied the defendant's motion for a new trial. On its appeal, the defendant claims that the trial justice erred in denying its motion for a directed verdict and its motion for a new trial. It also contends that several erroneous

evidentiary rulings were made during the course of the trial. Since the success of the husband's claim is dependent upon the defendant's liability for the wife's injuries, we shall discuss only the wife's claim. Hereafter, we shall sometimes refer to her as the "plaintiff," or the "wife" or "Mrs. Lamont."

The wife's fall occurred in the late afternoon of July 13, 1964. She had gone to the second floor of defendant's building to make a payment on a loan due one of defendant's tenants — Belmont Finance Company. The fall occurred on a stairway leading from the street to the second floor. The stairway was the sole means of access to the second floor.

The litigation was begun in July, 1966. At that time plaintiff filed a complaint alleging that her fall was the result of the cleaning of the stairway with a wax or polishing substance which made the stairway slippery and dangerous to a person using it. She alleged that defendant was under a duty to warn those entering the building of this hazard. Subsequently, in July, 1968, in her answer to defendant's interrogatories, plaintiff stated that as she started down the "dimly lighted" stairway, she slipped on what felt like a "puffy" tread and fell down the stairway. At the trial, the evidence related solely to puffiness and the lack of adequate illumination on the stairway. Since this evidence was introduced without any objection from defendant, the variance between the allegations in the pleading and the proof is of no significance. *Fishbein* v. *Zexter*, 107 R. I. 672, 270 A.2d 510 (1970); *Halpert* v. *Rosenthal*, 107 R. I. 406, 267 A.2d 730 (1970); *Cofone* v. *Narragansett Racing Ass'n*, 103 R. I. 345, 237 A.2d 717 (1968).

Sometime prior to July 13, 1964, Mrs. Lamont had co-signed a loan note for a couple who had received a loan from the finance company. When the couple defaulted in their payments, plaintiff, under a threat of having her pay

attached, took up the weekly payments on the balance due. She was employed as a secretary in the engineering department of a manufacturer located in Cranston. Consequently, on most Monday afternoons, Mr. Lamont would pick up his wife at her place of employment and drive her into Providence. The wife would go to the finance company's office and make a payment on the loan.

July 13, 1964 was payment day at the finance company. Mrs. Lamont arrived at 112 Mathewson Street at approximately 5:10 p.m. It was a cloudy and bleak day. She entered defendant's premises and walked up the stairs to the second floor. She made her payment, left the finance company's office and walked over to the stairway. The stairway leading from the second floor to the entranceway or vestibule at 112 Mathewson Street is composed of two flights of stairs. The entire stairway, including the steps, rises and landings, is composed of wood which had been completely covered with a rubber tile designed especially for stairways. The tile had been installed about eight years earlier in 1956.

A person descending the stairs first walks down a flight of three or four steps and then arrives at a landing. He makes a right-angle turn and then descends a second flight of some 17 or 18 steps to a landing which puts one in a vestibule just inside the Mathewson Street entrance.

After Mrs. Lamont made her payment to the finance company, she started down the stairs. She walked down the first four steps to the first landing, turned right and then walked to the first step preparatory to starting down the second flight of stairs. As she placed her foot on the edge of the landing which was covered with the rubber asphalt tile, her heel sank into the floor. The edge, she said, felt "puffy" and she heard a hissing sound. The wife was pitched forward. She grabbed for the handrail but before she could help herself, she fell down the 17 or 18

steps and landed face down on a rubber-cleated wire mat which lay at the foot of the stairway. Mrs. Lamont was knocked unconscious. The rescue squad was summoned and plaintiff was taken to the Rhode Island Hospital. The injuries she incurred were substantial. They necessitated hospitalization and subsequent confinement at home until mid-December, 1969.

In its appeal, defendant landlord concedes that it was duty bound to keep its stairway in a reasonably safe condition for the wife since she was a business invitee of one of its tenants. It took no exception to the trial justice's charge that it was obligated to adequately illuminate the stairway. In pressing its objection to the denial of its motion for a directed verdict, defendant argues with considerable force that the record is devoid of any evidence which shows that it could be charged with either actual or constructive notice of the puffy tile.

The wife claims that the puffiness in the tile covering the edge of the landing was a defect which caused her calamitous fall. The puffiness was caused because the adhesive substance which cemented the tile to the flooring had "let go" so that the tile had separated from the flooring leaving a space between the floor and the tile.

It is black letter law that when a defendant moves for a directed verdict, the trial justice does not pass upon the weight of the evidence or the credibility of witnesses but must submit the case to the jury if on any reasonable view of the evidence, including the reasonable inferences to be drawn therefrom, the plaintiff can recover. If the evidence is open to different interpretations one favorable and the other unfavorable to the plaintiff, the motion for a directed verdict should be denied. What credit should be given testimony of plaintiff considering the inconsistencies or discrepancies in her testimony is for the jury to determine.

*Russian* v. *Lipet,* 103 R. I. 461, 238 A.2d 369 (1968); *Elias* v. *Hartford Fire Ins. Co.,* 122 A. 529 (R. I. 1923).

The most significant portion of evidence which would make defendant chargeable with notice of the puffy tile was brought out during the cross-examination of Mrs. Lamont. She first told the court and jury that she had gone to the finance company's office at least ten times prior to July 13, 1964. Later, as the cross-examination began to zero in on the issue of notice, the following exchange occurred:

"77 Q Now, how deep did your feet sink into this linoleum?
A I don't know. I don't suppose to any great extent.
"78 Q Had you ever noticed this condition before?
A Well, —
"79 Q Yes, or no?
A I don't think I had, no. It was just, as I say, they're just generally shiny, the stairs were.
"80[1] Q I mean, you could see out this stairway from the glass door [leading from the finance company to the second floor corridor], but I never noticed it except everyone is careful when you go to walk up or down stairs, I think.
"81 Q But did you ever notice this puffiness on the top stairs?
A Well, frankly, I couldn't say. It seemed to me that there was always a little give, if you call it that.
"82 Q Did you ever tell anybody about it?
A Well, no; because, I mean, whom should I tell?
"83 Q I don't know.
A I don't think I would either."

Having in mind that the reconciliation of the inconsistencies in a witness's testimony is the job of the jury, it,

---

[1]This notation is an obvious typographical error. Question 80 actually is all part of plaintiff's reply to Question 79.

as the fact finder, could have found that since Mrs. Lamont was ever faithful in her weekly discharge of her obligation to defendant's tenant, the puffy condition in the tile at the landing's edge had existed for such an interval of time that defendant landlord or its employees should have discovered its presence. That such an inference was susceptible from the questions is demonstrated by counsel's inquiry of Mrs. Lamont as to whether she ever told anyone about the give in the edging of the landing.

The defendant's superintendent of buildings and maintenance testified that every day at about 7:15 a.m. he swept the stairway and noticed no puffiness in the tile which allegedly caused plaintiff's fall. The superintendent went on to explain that he was responsible for the maintenance of nine other buildings, all of which were owned by defendant and located within the downtown area. This fact could have warranted a finding that the superintendent was confronted with a multitude of duties which caused him to overlook the puffiness as he made his daily early morning sweep of the stairway at 112 Mathewson Street.

Having found that there was evidence from which the jury could have charged defendant with notice of the presence of the puffy tile, we cannot fault the denial of the motion for a direction.

We are not impressed with defendant's contention that the trial justice misconceived evidence in considering the motion for a new trial. Its position is premised on its insistence that there is an absolute absence of any evidence that the stairway lights were out at the time of Mrs. Lamont's fall. Once again defendant apparently overlooks its cross-examination of plaintiff where she conceded that she did not know if the lights were on or off but, she said, *if they were on,* there was no "brightness or anything like that. It was dull." This statement justified the jury in believing that in the late afternoon of a cloudy, bleak July

13, 1964, the lights shining on defendant's landing were insufficient to show the puffy tile. As noted earlier, the charge, to which no objection was made, gave the jury a choice of finding defendant liable on either one of two grounds — a defective condition of the stairs of which it had notice or its failure to provide adequate lighting on the stairway.

However, even if we assume that the trial justice has misconceived the evidence, this assumption does not automatically give defendant a new trial. Instead, it becomes the duty of this court to independently examine the record to see if there is any credible competent evidence which would support the verdict. *Molleur* v. *City Dairy, Inc.,* 110 R. I. 58, 290 A.2d 214 (1972); *D'Andrea* v. *Sears, Roebuck & Co.,* 109 R. I. 479, 287 A.2d 629 (1972). There is such evidence. The denial of the motion for a new trial is affirmed.

The defendant quite naturally seeks to minimize the damages sustained by the wife. When it, or any defendant, seeks to disturb a jury's award on the grounds of excessiveness, it assumes the burden of showing that there is a demonstrable disparity between the amount awarded and the pain and suffering endured because of the injury sustained. *Young* v. *Coca-Cola Bottling Co.,* 109 R. I. 458, 287 A.2d 345 (1972); *Heuser* v. *Goldstein,* 107 R. I. 317, 267 A.2d 420 (1970); *Romanelli* v. *A. B. C. Inc.,* 104 R. I. 689, 248 A.2d 598 (1968). In determining whether the burden is met in the instant case, let us look at Mrs. Lamont — before and after the fall.

In early July, 1964, she was regularly employed as a secretary. She was active in community affairs as a leader in the Girl Scouts. Her health had been excellent. A friend described Mrs. Lamont's pre-fall facial appearance as "really beautiful."

This all changed with her precipitous plunge down the

stairs onto the cleated mat. She sustained black eyes, a bruised face, and a brain concussion. Her right wrist and left metacarpal bone were broken. A picture, taken of plaintiff while she was in the hospital, was shown to the jury and it gives graphic evidence of the extent of her injuries. Her husband described the pool of blood that he observed in the vestibule.

Although plaintiff returned to work for her Cranston employer in December, 1964, she suffered a loss in pay because she could not perform her secretarial duties as effectively as she had prior to the fall. Ultimately, she had to leave this employment and seek a job that was within her capabilities. Because of her infirmities, she has been unable to find steady employment. Her manual dexterity has been diminished because of a numbness in her fingers. One finger is bent so that it cannot be straightened. She demonstrated a loss of income and a diminution in her earning capacity which was related to her fall.

She has a permanent limp and a "lopsided" jaw. A neurosurgeon who treated plaintiff testified that his patient would never be normal again. The plaintiff told of her inability to sleep, her "headaches" and the continuous "anguishing pain" she experienced. We need go no further.

The trial justice, in passing on this facet of the case, observed that plaintiff's haggard physical appearance belied her actual age.[2] He went on to say that Mrs. Lamont had not regained the vigor which characterized her activities prior to July 13, 1964. The trial justice emphasized that had the jury entered a larger verdict, he would have given it his approval. It is obvious that the jury believed that a lady who was once a youthful, healthy, vibrant, capable secretary was, because of defendant's negligence,

---

[2]When asked her age in direct examination, Mrs. Lamont replied that she was just on the "sunny side" of fifty. It turns out that the sun must have been at its zenith because she was just fifty at the time of the trial.

transformed into an aged-looking, disfigured, limping woman who could no longer work as well or as profitably as she did before her mishap.

In light of all these circumstances, defendant has failed to persuade us that the jury's award is excessive.

The final phase of defendant's appeal concerns the exclusion of certain testimony. The trial justice refused to permit the building superintendent to testify that there had been no repairs to the stairway tile since the time of its installation or that he had ever been notified either before or after the mishap of any defect in the stairway.

The defendant insists that it should have been allowed to show the lack of repairs since the jury had taken a view of the premises. A view, as we have said so many times before, is not evidence. Such a procedure is employed only to aid the jury in its understanding of the evidence adduced in the courtroom. We can perceive no error in the exclusion of the unrepaired status of the stairs.

Proof that no one notified the defendant of the defect in the tile was immaterial because there was no necessity of the plaintiff proving the defendant's actual knowledge of the defect. It may have been that there were others who, like Mrs. Lamont, knew of the defect but did not know who to contact. The plaintiff would prevail if proof of constructive notice was shown.

The trial justice's exclusion of the proposed testimony was correct.

The defendant's appeal is denied and dismissed.

JOSLIN, J., did not participate.

*John P. Bourcier,* for plaintiffs.

*Adler, Pollock & Sheehan, Peter Lawson Kennedy,* for defendant.