Christine BIELECKI et al.

v.

Lynne–Marie BOISSEL.

No. 95–715–Appeal.

Supreme Court of Rhode Island.

July 14, 1998.

Mark L. Smith, Smithfield, Lynn Bouvier Kapiskas, for plaintiffs.

Lauren E. Jones, Providence, Kevin Douglas Neitke, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This case comes to us on appeal from a final judgment entered in favor of the plaintiffs Christine and Dennis Bielecki as coexecutors of the estate of Ernest Boissel. The

defendant in that action, Lynne–Marie Boissel, appeals, alleging that the trial justice erred in denying her motion to dismiss made at the conclusion of the presentation of the plaintiffs' evidence and case in chief and in subsequently finding in favor of the plaintiffs and entering final judgment for the estate. We affirm the final judgment but remand the case for recalculation of damages in accordance with this opinion.

## I

### Case Travel—Facts

 The plaintiffs in this litigation are Christine Bielecki (Christine) and her husband Dennis Bielecki (Dennis), coexecutors of the estate of Ernest Boissel (Ernest). The defendant and appellant here is Lynne–Marie Boissel (Lynne).[1] Christine and Lynne are sisters, the daughters of Ernest. The litigation concerns a dispute with regard to the ownership of funds withdrawn from several joint bank accounts that stood in the names of Ernest and Lynne for some eleven years but from which Lynne withdrew funds shortly before Ernest's death on March 22, 1993.

The coexecutors of Ernest's estate filed a civil action in the Superior Court, seeking the return to the estate of all funds withdrawn by Lynne. In their civil-action complaint the coexecutors set out three separate counts and theories for recovery, (1) "unlawful detention," (2) "constructive trust," and (3) "conversion." Each count alleges that Lynne "falsely, fraudulently and with intent to deceive" induced Ernest to create the several joint accounts by representing to him that such were in his best interest and that she knew "that the aforesaid representations were false in that [she] intended to use the money for her own benefit and never for the benefit of [Ernest]." That fraud-in-the-inducement allegation overlaps each of the three counts in the plaintiffs' complaint.

In her appeal Lynne asserts that the trial justice erred in ruling upon her motion to dismiss made at the conclusion of the plaintiffs' case in chief.[2]

Additionally, she contends that on the basis of the allegations made in the complaint and in the absence of any finding of fraudulent conduct on her part made by the trial justice, the plaintiffs were not entitled to the relief granted in the final judgment entered by the trial justice. We address only the second contention because we conclude that even though the trial justice did employ a rule of law that was totally inapplicable to his consideration of the defendant's motion to dismiss, we nonetheless deem his error to be harmless in light of the after-developed case facts.

The trial record reveals that Lynne, unmarried and one of five adult children of Ernest and his wife, Eileen, lived with her parents in the family home in Woonsocket. Lynne in fact was a joint owner of that home with her parents. Ernest owned and operated a successful tavern business called Buddy's Cafe in Woonsocket.

Lynne's mother, Eileen, died in 1981. After Eileen's death, title to the Woonsocket house was transferred to Lynne and her father as joint tenants with right of survivorship. Ernest, then not in the best of health but still keen of mind and astute in business matters, decided to create and open several joint bank accounts with his daughter Lynne's name added to the accounts as a joint owner. When those accounts were opened, however, Ernest explained to Lynne his purpose for doing so and told Lynne that that purpose was that she could take care of

---

1. Because all but one of the parties concerned in this litigation are members of the same family and share the same last name, they will for purposes of clarity, be referred to by their first names.

2. The trial justice in this case, sitting without a jury, proceeded to hear and rule on the motion to dismiss and, in doing so, stated, "On a motion to dismiss, I take all the evidence favorable against the proponent." That was clear error on the part of the trial justice. *DeMascole v. Tatro*, 673 A.2d 57, 60 (R.I.1996). Rule 41(b)(2) of the Superior Court Rules of Civil Procedure requires the trial justice, when passing upon a motion to dismiss in a *nonjury case*, to assess the credibility of the witnesses as well as the weight of the evidence pending at the time of the motion. *Samuel Nardone & Co. v. Bianchi*, 524 A.2d 1114 (R.I.1987); *Town of Charlestown v. Beattie*, 422 A.2d 1250 (R.I.1980).

him during his lifetime, pay his bills, and assist in banking funds realized from his ongoing tavern business. Ernest specifically designated one of the accounts to be used for his funeral expenses, and as far as the remaining accounts were concerned, Lynne, upon his death, was to distribute whatever funds remained in the accounts to his family members and to include in that distribution his grandson, Jason. Lynne, in her testimony at trial, acknowledged those directions by her father, Ernest. She testified:

"He said he wanted me to take care of him, and that there was one particular account that was for $2,000 and that he wanted to use that for his funeral costs because that would convert into 4, and that after I paid all the bills, to distribute the funds to family members and to include Jason."

All went well and in accordance with Ernest's directions until sometime in 1991. From the time of Ernest's wife's death in 1981, his health declined significantly. In April 1991 Dennis took Ernest to an attorney for the purpose of drafting a will.[3] That will provided that Christine and Dennis Bielecki were to be coexecutors of the will. The will also provided that

"[i]n case at the time of my death there are any funds upon deposit in any savings or checking account of any bank or trust company, or any bonds, including U.S. Savings Bonds, shares of stock or other securities of any government or governmental agency, or of any corporation or savings and loan or building-loan association, standing in my name, together with the name or names of any other person or persons, I give and bequeath my interest, if any, in each such respective account, bond, share or other security to my estate and further declare that those names on the aforementioned accounts were placed on those accounts for convenience only and I did not intend to give those accounts as a gift to any person other than the gifts and bequests contained in this my estate and further declare that those names on the

aforementioned accounts were placed on those accounts for convenience only and I did not intend to give those accounts as a gift to any person other than the gifts and bequests contained in this my last will and testament."

On November 19, 1992, Ernest was admitted to Landmark Medical Center in Woonsocket, where he stayed until December 4, 1992, when he was transferred to the Holiday Nursing Home. During Ernest's stay at the nursing home, Lynne, in consultation with her brother Dennis, undertook to make some renovations of the Woonsocket home. Lynne believed that such renovations were necessary because a doctor at the Landmark Medical Center had stated that when Ernest was to be discharged, the nursing home would be a good environment for Ernest because it would be clean, thereby indicating that someone had informed the doctor that the Woonsocket house was not clean. In fact several of the family members agreed that the Woonsocket house was badly in need of repairs. A report from the Visiting Nurses of Woonsocket described the house as "extremely unkempt and filthy." A trial witness and friend of Lynne's who helped care for Ernest described the house as "[v]ery old. Needed renovations; no question. *** Needed replacement, renovations." Even Christine, the plaintiff in this action, testified that the house was "very unkempt." Dennis and Lynne also felt that the renovations to the house were necessary if Ernest was to return from the nursing home and live there, which they both expected him to do. Ernest himself was aware of the renovations, and although he was not in complete favor of spending his money from the joint accounts for them, he never specifically instructed Lynne or Dennis to stop the work, despite his being coherent enough to understand the situation and having numerous opportunities to voice his opinion. In fact Dennis opined that the renovations actually "gave him [Ernest] a little something to look forward to as well. He told Ernest, 'You are not going to be in this old folks home, you are not here to stay. It's going to be all fixed up and nice

---

**3.** Dennis accompanied Ernest on an earlier occasion to draft a will. However, none of the parties are aware of the contents of that original will, and that first will is not in dispute in this action.

and fresh for you.' " Unfortunately, Ernest never lived long enough to see the renovations to his house because on December 16, 1992, he was taken to the Bielecki house while the Woonsocket house was still undergoing renovations, and then, on December 19, Ernest returned to Pawtucket Memorial Hospital. Three days later he went into a coma from which he never recovered. On March 22, 1993, Ernest died.

On December 28, 1992, prior to Ernest's death but while he was in a coma, Lynne, having previously learned of the provisions providing for distribution of the joint accounts contained in Ernest's last will and testament, closed the accounts that she held jointly with Ernest and transferred the money into accounts bearing her name only. Thus, when Ernest's will took effect, including the provision that declared that the money in the joint accounts was to be distributed to his family and Jason, no money remained in those joint accounts.

On July 13, 1993, Christine and Dennis Bielecki, as coexecutors of Ernest's will, filed their civil action, the subject of this appeal, in the Superior Court against Lynne.

## II

### Plaintiffs' Complaint

Although at first blush it would appear that the trial justice was required to have first found fraudulent conduct on the part of Lynne in order to be able to grant the relief requested by the plaintiff coexecutors in their complaint, a closer reading of the trial record and the trial justice's decision reveals that no such finding was actually necessary.

■ The trial justice's decision is grounded entirely upon his finding that the accounts in dispute were all in the first instance created as convenience accounts and not as true joint accounts with right of survivorship. Although it is correct as asserted by counsel for Lynne at oral argument that the plaintiffs in their complaint had only made claims for

relief based and dependent upon alleged fraudulent conduct by Lynne and had not asserted any claim to the joint account funds on the basis of their being only convenience joint accounts, the trial record clearly shows that the plaintiffs' case was in fact tried in great part upon that convenience-joint-account theory and was so tried without objection thereto by the trial counsel for Lynne. Because that evidence was introduced at trial and was in essence acknowledged by Lynne to be credible, it was certainly available to the trial justice for purposes of his decision, and the claimed variance between the complaint allegations and the evidence presented at trial becomes of no significance. *Lamont v. Central Real Estate Co.*, 110 R.I. 438, 440, 294 A.2d 195, 197 (1972). *See also* Super.R.Civ.P. 15(b) (as amended, September 5, 1995). Lynne's contention here on appeal— that absent the plaintiffs' amendment of *their* complaint the relief granted was not permitted on the original complaint—is without merit. Even though plaintiffs should have moved to amend their original complaint so as to conform to the trial evidence upon which the trial justice's final judgment was based, their failure to amend the complaint did not affect the validity of the final judgment.[4]

At oral argument on her appeal Lynne raised for our consideration our recent holding in *Robinson v. Delfino*, 710 A.2d 154 (R.I. 1998). That case is inapplicable to this case. Nothing said in *Robinson* even suggests that joint bank accounts established for purposes of convenience only are no longer permitted. Neither does *Robinson* proclaim that any right of present ownership in the account funds is transferred in a joint bank account to a person whose name is placed thereon for purposes of convenience only.

■ In this case the trial justice specifically found that the accounts in dispute were joint accounts but that Lynne's name on those accounts was added only for Ernest's convenience and that Ernest retained, at all times, full ownership in the account funds.[5]

---

4. Rule 15(b) of the Superior Court Rules of Civil Procedure provides in pertinent part "*** failure so to amend does not affect the result of the trial of [those] issues."

5. Lynne's authority, therefore, was akin to that of a person with the durable power of attorney over another person's bank accounts. *See generally,* 3 Am.Jur.2d *Agency* §§ 23–35 (1986); Wayne P.

That finding of fact by the trial justice sitting without a jury is accorded great deference by us and will not be disturbed unless it is shown that he misconceived or overlooked material evidence or was otherwise clearly wrong in so finding. *Rowland Family Trust v. Pelletier*, 673 A.2d 1081, 1083 (R.I.1996); *Oster v. Tellier*, 544 A.2d 128, 131 (R.I.1988).

 We conclude from the trial record that the trial justice neither misconceived nor overlooked any material evidence, and his finding that the accounts in question were convenience accounts only was not clearly wrong. His finding was amply supported by the trial evidence and the reasonable inferences that he was permitted to draw therefrom. Accordingly, we affirm that part of his decision and the final judgment thereon that orders Lynne to return to Ernest's estate the funds withdrawn by her from the accounts in question. We conclude, however, that Lynne is entitled to retain the $8,000 with appropriate interest added thereon that the parties concede Lynne inherited from her mother's estate and contributed to one of the joint accounts. We also conclude that she is not required to return to the estate the $17,-505.91 that was expended from the accounts for the renovations made to the family home and intended for Ernest's benefit and which outlay Ernest implicitly and tacitly permitted and approved.

## III

### Award of Costs

Turning now to Lynne's contention that the trial justice improperly awarded costs to the Bieleckis, we find no abuse of the trial justice's discretion. General Laws 1956 § 9-22-5 provides:

> "**Recovery of costs by prevailing party.**—In civil actions at law, the party prevailing shall recover costs, except where otherwise specially provided, or as justice may require, in the *discretion* of the court." (Emphasis added.)

Section 9-22-21 provides in pertinent part:

> "Costs on depositions.—The taxation of costs in the taking of depositions shall be *subject to the discretion* of the court. No costs shall be allowed unless the court finds that the taking of the deposition was reasonably necessary, whether or not the deposition was actually used at the trial." (Emphasis added.)

Rule 54 of the Superior Court Rules of Civil Procedure provides in pertinent part:

> "**Judgment—Costs.—**
>
> * * *
>
> (d) *Costs.* Costs (including costs on depositions as provided for in Rule 54(e)) shall be allowed as of course to the prevailing party as provided by statute and by these rules *unless the court otherwise specifically directs.*
>
> (e) *Costs of Depositions.* If objected to, the taxation of costs in the taking of depositions shall be *subject to the discretion* of the court. In case of such objection, no costs shall be allowed unless the court finds that the taking of the deposition was reasonably necessary, whether or not the deposition was actually used at the trial." (Emphases added.)

 Rule 54, as well as §§ 9-22-5 and 9-22-21, leaves to a trial justice's discretion the decision to allow or disallow costs, including costs for depositions. The trial justice has discretion to determine whether pretrial depositions or other costs were reasonably necessary and, therefore, whether costs should be allowed for those particular items. Because Lynne has failed to demonstrate to this Court that the trial justice in this case clearly abused his discretion, we affirm the trial justice's assessment of costs against Lynne.

Accordingly, for all the foregoing reasons, Lynne's appeal is denied in part, and the judgment appealed from is affirmed in part. The final judgment ordering Lynne to return to the estate the funds withdrawn from the joint accounts in question, less the $8,000 of Lynne's own funds that she had deposited into one of the joint bank accounts with appropriate bank interest added thereto and

Roberts, *Use of the Durable Power of Attorney in Asset Management*, 3 Me.B.J. 32 (1988). Perhaps in the future it would be best to use a method

other than a joint bank account in order to achieve what is essentially a "convenience account."

the $17,505.91 that was expended to renovate the Woonsocket home, is affirmed. The papers in this case are remanded to the Superior Court with directions to enter judgment in accordance with this opinion.