Thomas J. McANDREW

v.

Kevin FITZGERALD, in his Capacity as Treasurer of the City of East Providence.

No. 97–588–Appeal.

Supreme Court of Rhode Island.

Dec. 21, 1998.

J. Robert Weisberger, Providence.

Marc DeSisto, Kathleen M. Powers, Providence.

### ORDER

This case came before the Court on December 7, 1998 pursuant to an order directing both parties to appear and show cause why the issues raised in the defendant's appeal from a Superior Court judgment in favor of the plaintiff should not be summarily decided.

After hearing the arguments of counsel and reviewing the memoranda submitted

by the parties, we are of the opinion that cause has not been shown. The issues raised in the defendant's appeal will be decided at this time.

In January 1990, several members of the East Providence police department who were displeased with the choice of a recently appointed new chief of the department filed a civil rights action in the United States federal District Court for the district of Rhode Island, alleging violation of rights secured them by virtue of 42 U.S.C. §§ 1983 and 1985. The city solicitor, William Conley (Conley), pursuant to the city charter, represented the City of East Providence (City) in that litigation and Thomas J. McAndrew (McAndrew), the plaintiff here, was retained to represent the newly appointed chief of police, whose appointment had triggered the federal action.

The plaintiffs in that federal action had alleged that promotion procedures utilized in the City's police department were biased in favor of certain other members of the department, including the recently appointed chief of police. The dissident police department members' federal action was short lived. A federal District Court judge granted summary judgment in favor of all defendants on September 14, 1990. The defendants thereupon sought attorneys' fees and Rule 11 sanctions against the plaintiffs. The federal court trial judge ruled that Attorneys McAndrew and Conley would not be permitted to represent their respective clients in the attorneys' fee-sanction phase of that litigation because they could be potential hearing witnesses. Because of that disqualification, the defendants thereupon decided to be represented collectively by Daniel McKinnon (McKinnon), and McKinnon was retained by the City to represent all defendants in the fee and sanction hearings. At a meeting held on June 6, 1991 between the City and all defense attorneys and/or the defense attorneys' representatives, Conley informed all present that no counsel, other than McKinnon, would be paid

for any work performed on the fee-sanctions phase of the case. Although McAndrew was not personally present at that meeting, his associate Patricia Andrews was present.

McAndrew, nonetheless, continued to advise McKinnon on various facets of the case, despite having been disqualified and told by Conley that McKinnon was the only counsel who would represent all of the defendants in the fee-sanction phase of the federal hearings. McAndrew actually continued, however, to submit monthly bills to the City of East Providence for his advisory assistance to McKinnon despite Conley's admonition at the June 6 meeting that only McKinnon would be compensated for work done on the case. McKinnon testified that he had never retained McAndrew.

In a letter dated February 18, 1992, Conley specifically again informed McAndrew that certain legal bills submitted by McAndrew, presumably for past work, would be paid after the expiration of the City's fiscal year. That reference, as noted, was for charges believed made for other previous legal work that had been performed by McAndrew while representing the police chief and not for work done on the fee-sanctions portion of the federal case. That same letter further expressed the City's objection to McAndrew's billings for the fee-sanction portion of the federal case and reminded McAndrew of the June 6 meeting admonitions and the fact that counsel were informed at that time that only McKinnon would be paid for work performed during the fee-sanctions portion of the federal case. Notwithstanding his stated concerns, Conley, apparently as a matter of courtesy, submitted McAndrew's billings to the City Council's Claims Committee.

In October 1992, the Claims Committee did, without explanation, authorize the payment of $19,820 to McAndrew for legal work billed for services allegedly performed between June 7, 1991 and April 8, 1992.

On February 22, 1994, McAndrew, not having received any further payment from the City, instituted the instant action in the Superior Court in an attempt to recover payment for the as yet unpaid alleged work performed on the fee-sanction portion of the federal action. The trial on that complaint was heard by a Superior Court justice sitting without a jury. After trial, the trial justice found that the City of East Providence Claims Committee, by paying the $19,820 for the work allegedly performed between June 7, 1991 and April 8, 1992, had thereby created a "binding, legal obligation upon the City to pay for the services rendered" by McAndrew. As a result, the trial justice entered judgment for McAndrew for $51,188.53. The City's appeal followed.

Although we are mindful of the fact that factual findings by a trial justice sitting without a jury are entitled to great deference, those findings are not immune from being overturned if we conclude that the trial justice misconceived or overlooked material trial evidence or was otherwise clearly wrong. *Bielecki v. Boissel,* 715 A.2d 571, 575 (R.I.1998). *See also Rowland Family Trust v. Pelletier,* 673 A.2d 1081, 1083 (R.I.1996).

We conclude from the record before us in this case that the trial justice was clearly wrong in finding that the unexplained authorization given by the City's Claims Committee for the payment of McAndrew's bills for legal advice given to McKinnon somehow mushroomed into a legal binding contract with the City. In fact, it actually contradicts the trial justice's initial and correct declination to find that there existed any valid contract for services entered into between the City and McAndrew with respect to the fee-sanction portion of the federal litigation. There is no evidence in the record before us indicating in any manner that the City's Director of Finance, acting through the Division of Control and Accounts, had ever examined or approved of any contract or other document by which the City had incurred any financial obligation to McAndrew as required by Sec. 4–8 of the City Charter. In addition, there is nothing in the record showing any appropriation or allotment of funds by the city council that would have been available to meet any obligations that could become payable to McAndrew.

It is clear from the record that either the Claims Committee had mistakenly responded to a request for payment that had been submitted to it or else its payment represented its judgment as to what the City should do in response to the attorney's fee claims submitted by McAndrew. The Claims Committee was only authorized to review disputed claims against the City and to authorize the settlement or rejection of those claims. It was not empowered to bind the City to any contract or agreement with McAndrew. Accordingly, the action of the Claims Committee did not create a binding legal obligation to pay McAndrew for any work he might have performed on the fee-sanction portion of the federal case. McAndrew was for all intents merely an interloper in that proceeding, volunteering advice to McKinnon who was certainly fully capable of representing the city's interest.

For all of the foregoing reasons, the defendant's appeal is sustained. The judgment appealed from is reversed. The papers in this case are remanded to the Superior Court with directions to enter judgment for the defendant city treasurer in accordance with this opinion.

Chief Justice WEISBERGER did not participate.